FILED
2019 Nov-07  AM 10:59
U.S. DISTRICT COURT
N.D. OF ALABAMA

# IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF ALABAMA
### NORTHEASTERN DIVISION

| | | |
|---|---|---|
| **CHARLENE GDYNIA; JASHON JONES,** | ) | |
| | ) | |
| | ) | |
| **Plaintiff,** | ) | **CIVIL ACTION NO.:** |
| | ) | _____ |
| **vs.** | ) | |
| | ) | |
| **MJTV, LLC d/b/a JIMMY'S LOUNGE; JAMES M. HOLT, And MICHAEL HOLT,** | ) | |
| | ) | |
| | ) | |
| | ) | |
| **Defendants.** | ) | |

## COMPLAINT

Plaintiffs Charlene Gdynia and Jashon Jones state the following as their Complaint against MJTV, LLC, d/b/a/ Jimmy's Lounge ("Jimmy's"), James M. Holt; and Michael Holt.

## I.  INTRODUCTION

Plaintiffs were or are presently exotic dancers/entertainers at an establishment known as Jimmy's Lounge in Madison County, Alabama.  This is a claim brought under the Fair Labor Standards Act, 29 U.S.C. § 201, *et. seq.* ["FLSA"] for failure to pay the required minimum wage.

Defendants willfully engaged in a pattern, policy and practice of unlawful conduct for the actions alleged in this Complaint.  Defendants willfully failed to pay

1

Plaintiffs the minimum wage they were entitled to under applicable federal laws. Additionally, Defendants engaged in unlawful tip splitting by requiring dancers to split and share gratuities given to them by patrons with their non-tipped employees, including bouncers and disc jockeys.

Plaintiffs bring this action seeking damages, back pay, restitution, liquidated damages, civil penalties, prejudgment interest, reasonable attorneys' fees and costs, and any and all other relief that the Court deems just, reasonable and equitable in the circumstances.

## II.  JURISDICTION AND VENUE

1.     This Court has subject-matter jurisdiction over Plaintiffs' FLSA claims pursuant to 28 U.S.C. § 1331 because Plaintiffs' claims raise a federal question under 29 U.S.C. § 201, *et seq*.

2.     Jimmy's annual sales exceed $500,000, and it employs more than two persons in commerce, so the FLSA applies. 29 U.S.C. § (s)(1)(A)(i)-(ii).

3.     Venue is proper in this District pursuant to 28 U.S.C. § 1391 because the actions and omissions giving rise to the claims pled in this Complaint substantially occurred in this District.

## THE PARTIES

4.     Charlene Gdynia is a resident of Montgomery County, Tennessee, and is over the age of nineteen (19).  Ms. Gdynia has worked as an exotic dancer at Jimmy's from approximately 2009 until October of 2019.

5.     Jashon Jones is a resident of Lincoln County, Tennessee, and is over the age of nineteen.  Ms. Jones has worked as an exotic dancer at Jimmy's since approximately 2009.

6.     Plaintiffs were:  (1) misclassified as independent contractors and as a result, not paid the wages they were entitled to as an employees; (2) Plaintiffs were required to split income with Defendants as described more fully below.

7.     MJTV, LLC d/b/a Jimmy's is a business entity operating as a lounge and nightclub featuring exotic dancer entertainment in Madison County, Alabama. As explained below, MJTV, LLC, is a successor to JAH, LLC, which operated Jimmy's until sometime after 2017.

8.     Jimmy's intentionally and with knowledge of the law prohibiting the practice, classified exotic dancers as independent contractors, as opposed to employees.  This was done solely to avoid paying them minimum wage, as required under the FLSA.

9.     James M. Holt is an individual, over the age of nineteen (19) years, residing in Madison County, Alabama, who at all pertinent time directed, in concert

with his son, Michael Holt, the terms and conditions of employment for exotic dancers at Jimmy's.

10.    Michael Holt is an individual, over the age of nineteen (19) years, residing in Madison County, Alabama.

## IV.   FACTUAL ALLEGATIONS

### A.    Facts Relating To Liability of James and Michael Holt.

11.    James and Michael Holt (collectively "the Holts"), at all times pertinent to the case, dominated the operation of Jimmy's.  The Holts set and enforced all policies with regard to the terms and conditions of employment for exotic dancers.

12.    The Holts set each policy related below regarding work hours, tip-outs, payment for private dances, and any other requirements of exotic dancers at Jimmy's.

13.    Prior to MJTV's creation and taking over control of Jimmy's, it was operated, nominally, by JAH, LLC.  However, the corporate entity was largely disregarded as the Holts regularly took large payments from the business.

14.    In March of 2019, the Holts caused JAH, LLC, to be dissolved. However, very little changed with regard to the actual operation of Jimmy's.  The business was then nominally ran by another corporate entity, but the Holts continued to dominate its operation, just as they had always done.

15.    The Holts caused the dissolution of JAH, LLC, however, they continued to run the business nominally through another corporation, MJTV, LLC ("MJTV").

16.    MJTV is liable to the Plaintiffs for FLSA claims as the successor to JAH, LLC.

17.    MJTV is liable as the successor to JAH, LLC, for the principal reasons set forth below.

18.    First, there is substantial continuity between the operations of Jimmy's under JAH, LLC, and MJTV.  Mr. Holt and the management team at Jimmy's, largely his family, have continued to own the business entities nominally designated as running Jimmy's, and nothing, operationally, changed upon the dissolution of JAH, LLC, and the creator of MJTV for the purposes of operating Jimmy's.

19.    In fact, as recently as September 1, 2019, the Jimmy's Facebook page said, "Attention: I know there's been rumors floating around.  Here is the truth. Jimmy's is not being sold and has not been sold.  It is still under the same ownership and management.  Jimmy's has been under the same family for 30 years and it will always be that way."   Jimmy's management itself admits to a continuity of ownership.

20.    There is certainly also notice to MJPV of the practices of JAH, LLC. These are the same people.  Moreover, JAH, LLC, settled a lawsuit brought by exotic

dancers under the same theories Plaintiffs bring, and was well aware of the liability it had for continuing the same unlawful practices.

21.     Lastly, MJTV can provide relief in this case as it is, for all intents and purposes, the same as JAH, LLC.  It has no more and no less ability to provide relief to the Plaintiffs than JAH, LLC, because they are the same business with the same location, physical assets, capital structure, work force, management structure, and management initiatives and practices as JAH, LLC.

22.     Not only does MJTV have FLSA liability as the successor to JAH, LLC, but James and Michael Holt are liable, individually, to Plaintiffs, as employers as that term is defined under 29 U.S. C. § 203(d).

23.     The Holts are, and have been at all times relevant to this action, in a position to control the work activities of Plaintiffs and the other exotic dancers at Jimmy's.  The Holts at all times had the power to, and did on occasion, hire and fire exotic dancers at Jimmy's.  The Holts, at all pertinent times, made the management decisions regarding exotic dancers in implementing and enforcing the hours, work schedules, and working conditions of the exotic dancers outlines herein.

24.     The Holts determined how exotic dancers such as Plaintiffs would be paid, and how tip-outs and dance fees would be split and accounted for.  Finally, the Holts maintained what employment records were kept at Jimmy's.

25.     In short, the Holts directed all of the terms and conditions of the Plaintiffs' employment.

**B.     Facts Relating To Working Conditions For Exotic Dancers at Jimmy's.**

26.     Plaintiffs have been intentionally misclassified by Jimmy's as independent contractors.

27.     Plaintiffs have not been paid a minimum wage by Jimmy's.

28.     No exception to the FLSA applies to Plaintiffs.

29.     At all relevant times, Jimmy's directly and indirectly exercised significant control over the wages, hours, and working conditions of Plaintiffs.

30.     Plaintiffs incurred financial loss, injury and damage as a result of Jimmy's business practice of misclassifying them as independent contractors and failing to pay them a minimum wage.

31.     Plaintiffs generated income solely through the monies received from customers when performing exotic dances.

32.     All monies that Plaintiffs received from customers in the performance of exotic dances were, as described below, either tips or service fees.  In either case, as described below, Jimmy's had no right to keep any portion of them.  These payments were given by patrons directly to and/or solely for services performed by Plaintiffs and therefore, if considered tips, belong to Plaintiffs, not Jimmy's.

7

33.    The payments Plaintiffs received from patrons in relation to exotic dances were not taken into Defendants' gross receipts, with a portion then paid out to Plaintiffs.  Defendants have never issued W-2 forms, 1099 forms, or any other documents to Plaintiffs indicating any amounts being paid from their gross receipts to Plaintiffs as wages.

34.    Plaintiffs were considered tipped employees, as they were engaged in an occupation in which they customarily and regularly receive more than $30 a month in tips, if dance fees are considered tips.  No tip credits offsetting any minimum wages due, however, are permitted.  Therefore, Plaintiffs are entitled to: (i) minimum wages for all work performed; and (ii) the full amount of any monies paid by customers for the performance of exotic dances.

35.    Jimmy's misclassification of Plaintiffs was specifically designed to deny Plaintiffs their fundamental rights as an employee to receive minimum wages, to demand and retain portions of tips given to them by customers, and to enhance Jimmy's profit margin at the expense of Plaintiffs and the other dancers.

36.    Jimmy's  misclassification of Plaintiffs was willful.

37.    Jimmy's knew or should have known that Plaintiffs were improperly misclassified as an independent contractor.

38.    The determining factor as to whether Plaintiffs are employees or independent contractors under FLSA is not the workers' or employees' election,

subjective intent, or any contract.  <u>Rutherford FoodCorp. v. McComb</u>, 331 U.S. 722, 727 (1947).  Rather, the test for determining whether an individual is an "employee" under the FLSA is the economic reality test.  Under the economic reality test, employee status turns on whether the individual is, as a matter of economic reality, in business for themselves and truly independent, or rather is economically dependent upon finding employment in others.  In this case, dependent upon Jimmy's to make a living.

39.    Workers cannot "elect" to be treated as employees or independent contractors under threat of adverse treatment.  Nor can workers agree to be paid less than the minimum wage.  Despite this, Jimmy's unfairly, unlawfully, fraudulently and unconscionably coerced Plaintiffs to waive their statutory rights and elect to be treated as independent contractors.

40.    Under the applicable test, courts utilize several factors to determine economic dependence and employment status. They are: (1) the degree of control exercised by the alleged employer, (ii) the relative investments of the alleged employer and employee, (iii) the degree to which the employee's opportunity for profit and loss is determined by the employer, (iv) the skill and initiative required in performing the job, (v) the permanency of the relationship, and (vi) the degree to which the alleged employee's tasks are integral to the employer's business.

41.    The totality of circumstances surrounding the employment relationship between Defendants and Plaintiffs establishes economic dependence by Plaintiffs on Defendants and employee status.   Here, Plaintiffs were not in business for themselves and truly independent, but rather were economically dependent upon finding employment with Defendants.  Plaintiffs did not engage in an occupation or business distinct from that of Jimmy's.  To the contrary, Plaintiffs and the other dancers were and are the basis for Jimmy's business.  Without exotic dancers, Jimmy's cannot exist as a "Gentlemen's Club."

42.    Jimmy's obtains the customers who seek out exotic dance entertainment and provides the workers who conduct the exotic dance services. Jimmy's retains pervasive control over the Club's operations as a whole, and Plaintiffs and the other dancers' duties are an integral part of those operations.

**B.    Degree of Control Exercised by Defendants.**

43.    Plaintiffs and the other dancers do not exert control over any meaningful part of Jimmy's operations, and do not stand as separate economic entities from Jimmy's.  Defendants exercise control over all aspects of the working relationship with Plaintiffs and the other dancers at the Club.

44.    Plaintiffs economic status is inextricably linked to conditions over which Jimmy's has complete control, including but not limited to, advertising and

promotion, the atmosphere and surroundings at the club, the flow of customers into the club, and the customer volume.

45.     Jimmy's employs guidelines and rules dictating the way in which Plaintiffs and the other dancers must conduct themselves while working.   These guidelines include, but are not limited to:

      a.     Requiring the dancers to report for work at specific times, and stay specific hours.  If the dancers left early, they would be forced to pay the club extra;
      b.     Requiring a particular number of shifts per week;
      c.     Setting the prices of private dances;
      d.     Controlling when the dancers will be on stage; and
      e.     Approval of wardrobe.

46.     Jimmy's controls the conduct of dancers while at work, including how dances are to be performed.  How often the dancers are to be on stage performing, and requiring dancers to mingle with patrons in a manner which supports Defendants' general business plan, but to no benefit of the dancers.

47.     Jimmy's requires dancers to literally pay management a fee to work there.  They also must pay pre-determined "tip-outs" to non-tipped employees such as bouncers, managers and disc jockeys.  The amounts fluctuated, seemingly at the whim of the manager on duty.  One thing remained constant, however; the dancers had to pay these non-tipped employees to work there, or they would be fired.

48.     Jimmy's requires that shifts commence at particular times for a minimum number of hours.  For example, Jimmy's requires dancers to report to

management at the beginning and end of each shift.  If a dancer is late or absent for a shift or does not appear timely for her dance on stage, a dancer is subject to a monetary penalty.

49.    Dancers are required to complete the entirety of their shifts, and are not permitted to leave early without penalty.  In the event the dancer leaves a shift early, she is subjected to a monetary fine.

50.    Jimmy's imposes other penalties on dancers related to maintaining their weight and other certain aspects of their physical appearance.

51.    One element of a dancer's job is performing private exotic dances in a VIP room.  Jimmy's, not the dancers, establishes a minimum rate per song that dancers must collect from patrons when performing exotic dances in the VIP room. Jimmy's then imposes a charge, usually $5.00, for each dancer to use the VIP room in performance of an exotic dance.  She must "tip-out" the payment at the end of each dance.  The "tip-out" charges for the VIP room would increase as the time a patron spent in the VIP room increased.

**C.    Facts Negating Skill and Initiative of a Person in Business for Themselves.**

52.    Plaintiffs did not exercise the skill and initiative of a person in business for herself.

53.    Plaintiffs were not required to have any specialized or unusual skills to work, and the skills utilized in performing exotic dances are commensurate with those exercised by ordinary people.

54.    Plaintiffs did not have the opportunity to exercise the business skills and initiative necessary to elevate their status to that of independent contractors as they owned no enterprise, nor did they maintain separate business structures or facilities.

55.    Plaintiffs had no control over customers, nor did they actively participate in any efforts to increase Jimmy's client base, profit, or to improve business in any capacity.

56.    A dancer's own initiative is limited to wardrobe, which is itself subject to final approval by Jimmy's, and how provocatively to dance, actions that are consistent with the status of an employee as opposed to an independent contractor.

57.    Plaintiffs were not permitted to hire or subcontract other qualified individuals to provide additional dances to patrons, and increase their revenue, as an independent contractor in business for themselves would have the authority to do.

**D.    <u>Facts Establishing Relative Investment</u>.**

58.    Plaintiffs' relative investment is minor when compared to the investment made by Jimmy's.

59.   Plaintiffs made no financial investment in facilities, advertising, maintenance, sound system and lights, food, beverage and other inventory.  All capital investment and risk belongs to Jimmy's.

60.   Plaintiffs' investment is limited to expenditures on wardrobe and make-up.  Absent Jimmy's investment and provision of the club work environment, Plaintiffs would not have earned anything.

E.   **Facts Establishing Opportunity for Profit and Loss.**

61.   Jimmy's manages all aspects of the business operation, including but not limited to attracting investors, maintaining the premises, establishing the hours of operation, setting the atmosphere, coordinating advertising, hiring and controlling the staff.  Jimmy's provides all necessary capital to open and operate the business.

62.   Plaintiffs had no responsibility for any aspect of Jimmy's ongoing business risk.  Jimmy's secures all financing, the acquisition and/or lease of the physical facility and equipment, inventory, the payment of wages (for managers, bartenders, doormen, and waitresses).  Jimmy's alone is responsible for securing all necessary and appropriate insurance and licenses.  Jimmy's sets the minimum dance tip and other tip amounts that should be collected from patrons, and establishes the tip splitting policy for dances performed in the VIP rooms.

F.   **Facts Establishing Permanency.**

63.   Plaintiffs worked regularly at Jimmy's, as alleged above.

G.   **Facts Establishing Plaintiffs are a Integral Part of Employer's Business.**

64.   Exotic dancers like Plaintiffs are critical to the success of Jimmy's and its very operation is wholly dependent on the existence of exotic dances being provided by dancers for patrons.

65.   The primary "product" or "good" Jimmy's is in business to sell consists of dances performed by the exotic dancers.  Other goods sold by Defendants include drinks and food, which are served to patrons by waitresses, shot girls, and bartenders.

66.   Plaintiffs have been misclassified as an independent contractor and should have been paid minimum wages at all times they worked.

H.   **Facts Establishing Defendants' Acts were Willful.**

67.   All of the actions described herein were willful, intentional and not the result of mistake or inadvertence.

68.   Jimmy's is aware that the FLSA applies to its business at all relevant times and that under the economic realities test applicable to determining employment status under those laws the dancers were misclassified as independent contractors.

69.   Jimmy's was aware of and/or the subject of previous litigation and enforcement actions relating to wage and hour law violations where the misclassification of exotic dancers as independent contractors was challenged.

70.     Exotic dancers working under conditions similar to those employed at Jimmy's have been determined to be employees under the wage and hour laws, not independent contractors.

71.     Jimmy's was aware, and had actual or constructive notice, that applicable law rendered all tips given to class members by patrons when working were Plaintiffs' sole property, rendering its tip-share, and tip-out scheme unlawful.

72.     Despite this notice of their violations, Jimmy's intentionally chose to continue to misclassify dancers like Plaintiffs, withhold payment of minimum wages and require dancers to split their tips in an effort to enhance their profits.  Such conduct and agreements were intentional, unlawful, fraudulent, deceptive, unfair and contrary to public policy.

73.     Jimmy's was a Defendant in a collective action styled <u>Miller, et al. v. JAH, LLC</u>, Civil Action No.: 5:16-cv-01543.  That action was brought on behalf of exotic dancers at Jimmy's, and contained many of the same allegations that this case does.

74.     The above-referenced lawsuit was settled after the Court granted conditional certification.

75.     The settlement of the case was approved on May 28, 2018.

76.     Plaintiffs were aware of the case, and were hopeful that the lawsuit would change working conditions at the nightclub.  Conditions changed very little.

77.     Even after the original case, Plaintiffs still had to pay Jimmy's $5.00 out of every $25.00 received for private dances.  Plaintiffs continued to have to pay a tip-out every time they worked at Jimmy's.  The amount of the tip-out changed, but the money continued to be used to pay the disc jockey out of the money Plaintiffs collected for on stage dances, and for private dances.

78.     One thing that did change was that Plaintiffs and the other dancers were told that they were going to be required to clock in, and that they were required to work at least six (6) hours for each shift.

79.     Plaintiffs and the other dancers were also told that they would be paid the tipped rate of $2.13 for each hour worked at the club.  It would appear that Jimmy's was now taking the position that the dancers were employees, who were tipped employees.

80.     However, Plaintiffs did not receive their $2.13 per hour as a tipped employee.  Moreover, Jimmy's confiscation of the tip-out, disc jockey, monies, and $5.00 for each private dance is an unlawful confiscation of tips which under the law, belong to Plaintiffs.

## V.   INJURY AND DAMAGE

81.     Plaintiffs have been harmed, and incurred damage and financial loss as a result of Jimmy's conduct complained of herein.

82.    Plaintiffs were entitled to minimum wages and to retain all of the private dance tips and other tips they were given by patrons.  By failing to pay Plaintiffs minimum wages and interfering with their right to retain all of the dance tips and other tips she was given by patrons, Jimmy's injured Plaintiffs, causing them financial loss, harm, injury and damage.

## VII.   CAUSES OF ACTION

### COUNT I - VIOLATION OF THE FLSA
(Failure to Pay Statutory Minimum Wages Against All Defendants)

83.    Plaintiffs hereby incorporate all of the preceding paragraphs as if fully stated herein.

84.    James and Michael Holt, as described above, because of the control they exercised over Plaintiffs, are "employers" as that term is defined by 29 U.S.C. § 203(d), and are thus individually liable.  Each claim under this Count is made against the Holts, individually, as well as against MJTV, LLC.

85.    This claim arises out of Defendants' willful violation of the Fair Labor Standards Acts, 29 U.S.C. Sec. 201, et seq., for failure to pay a minimum wage to Plaintiffs to which they were entitled.

86.    At all relevant times, Jimmy's employed Plaintiffs within the meaning of the FLSA.

87. At all relevant times, Jimmy's has been engaged in interstate commerce and/or the production of goods for commerce, within the meaning of the FLSA, 29 U.S.C. § 201.

88. At all relevant times, Jimmy's was an enterprise whose annual business income was in excess of $500,000, pursuant to 29 U.S.C. § 203(5)(1)(A)(ii).

89. The minimum wage provisions of the FLSA, 29 U.S.C. 201 et seq., apply to Jimmy's, and protect Plaintiffs.

90. Pursuant to 29 U.S.C. § 206, Plaintiffs were and are entitled to be compensated at the rate of $7.25 per hour.

91. 29 U.S.C. § 207(a) provides in pertinent part:

> ... no employer shall employ any of his employees who in any workweek is engaged in commerce or in the production of goods for commerce, or is employed in an enterprise engaged in commerce or in the production of goods for commerce for a workweek longer than forty hours unless such employee receives compensation for his employment in excess of the hours above specified at a rate of not less than one and one-half times the regular rate at which he is employed.

92. Jimmy's failed to pay Plaintiffs the minimum wage set forth in 29 U.S.C. § 206, or any wages whatsoever.

93. Jimmy's failed to pay Plaintiffs a minimum wage throughout the relevant time period because Jimmy's intentionally misclassified them as independent contractors.

94.    The amount paid to Plaintiffs by patrons in relation to private dances or other services performed were tips, not wages.  Those tips were not the property of Jimmy's.

95.    The private dance fees are paid directly to the dancers by customers, not by Jimmy's.  Thus, they cannot be wages.

96.    Courts have classified private dance fees paid by customers of exotic dance clubs as either tips or service fees.  In either case, Jimmy's cannot confiscate the private dance fees and they are due to be returned to Plaintiffs.  If the private dance fees are considered tips, then Jimmy's has no right to them because under the FLSA an employer may not keep any portion of employees' tips . . ."  29 U.S.C. § 203(m)(2)(B).

97.    It could be argued that the private dance fees are service fees paid to the establishment.  However, in such a case, Jimmy's still would not be able to retain them, nor would it be able to claim such confiscated private dance fees as a credit against its minimum wage obligation.

98.    In order to take the private dance fees as a credit, Jimmy's would have to actually pay Plaintiffs and the other dancers, and then it would have to have both included in the gross revenues of the company, and then pay them out to the dancers. This was not done.

99.    As a result, under any circumstance the amounts paid to Plaintiffs by patrons in relation to private table dances cannot be used to offset Jimmy's obligation to pay Plaintiffs' minimum wages due.  See Hart v. Rick's Cabaret, Int'l, 2013 U.S. Dist Lexis 129130 (S.D.N.Y. Sept. 10, 2013) *e.g.*, Reich v. ABC/York-Estes Corp., 157 F.R.D. 668, 680 (N.D.Ill. 1994), rev'd on other grounds, 64 F.3d 316 (7th Cir. 1995); Reich v. ABC/York-Estes Corp., 1997 WL 264379 at *5-7 (N.D.Ill. 1997).

100.    Further, no tip credit applies to reduce or offset any minimum wages due.  The FLSA only permits an employer to allocate an employee's tips to satisfy a portion of the statutory minimum wage requirement provided that the following conditions are satisfied: (1) the employer must inform the tipped employees of the provisions of § 3(m) of the FLSA, 29 U.S.C. § 203(m); and (2) tipped employees must retain *all the tips* received except those tips included in a tipping pool among employees who customarily receive tips.  29 U.S.C. § 203(m).

101.    Neither of these conditions was satisfied.  Defendants did not inform Plaintiffs of the provision of § 3(m) of the FLSA, 29 U.S.C. § 203(m), even after it somewhat altered its policies; and Plaintiffs did not retain all tips received.

102.    Jimmy's did not notify Plaintiffs that their dance fees were being used to reduce the minimum wages otherwise due under FLSA's tip credit provisions and that they were still due the reduced minimum wage for tipped employees because

Defendants maintained as a business strategy that Plaintiffs and the other dancers were not due a minimum wage due to the classification as independent contractors.

103.   Jimmy's requirement that Plaintiffs and the other dancers split their tips, and pay Defendants a portion of all dance tips, and to pay a "tip-out" to other employees who do not customarily receive tips, such as bouncers, managers and disc jockeys was not part of a legally permissible or valid tip pooling or tip sharing arrangement.

104.   Based on the foregoing, Plaintiffs are entitled to the full statutory minimum wages set forth in 29 U.S.C. §§ 206 and 207 for all periods in which Plaintiffs worked at Jimmy's, along with all applicable penalties, liquidated damages, and other relief.

105.   Jimmy's conduct in misclassifying Plaintiffs as independent contractors was intentional and willful and done to avoid paying minimum wages and the other benefits that Plaintiffs were legally entitled to receive.

106.   Plaintiffs seek damages in the amount of their unpaid wages, liquidated damages as provided by 29 U.S.C. § 216(b), interest, and such other legal and equitable relief as the Court deems proper.

107.   12 U.S.C. § 211(c) provides in pertinent part:

( c)    Records

> Every employer subject to any provision of this chapter or of any order issued under this chapter shall make, keep, and preserve such records of the persons employed by him and of the wages, hours, and other conditions and practices of employment maintained by him, and shall preserve such records for such periods of time, and shall make such reports therefrom to the Administrator as he shall prescribe by regulation or order as necessary or appropriate for the enforcement of the provisions of this chapter or the regulations or orders thereunder.

108.   29 C.F.R. § 516.2 and 29 C.F.R. § 825.500 further require that every employer shall maintain and preserve payroll or other records containing, without limitation, the total hours worked by each employee each workday and total hours worked by each employee each workweek.

109.   To the extent Jimmy's failed to maintain all records required by the aforementioned statutes and regulations, and failed to furnish Plaintiffs comprehensive statements showing the hours that they worked during the relevant time period, it also violated the aforementioned laws causing Plaintiffs damages.

110.   When the employer fails to keep accurate records of the hours worked by its employees, the rule in <u>Anderson v. Mt. Clemens Pottery Co.</u>, 328 U.S. 680, 687-688 66 St.Ct. 1187 (1946) is controlling.  That rule states:

> ...where the employer's records are inaccurate or inadequate ... an employee has carried out his burden if he proves that he has in fact performed work for which he was improperly compensated and if he produces sufficient evidence to show the amount and extent of that work as a matter of just and reasonable inference.  The burden then

shifts to the employer to come forward with the evidence of the precise amount of work performed or with evidence to negative the reasonableness of the inference to be drawn from the employee's evidence.  If the employer fails to produce such evidence, the court may then award damages to the employee, even though the result be only approximate.

111.   The Supreme Court set forth this test to avoid placing a premium on an employer's failure to keep proper records in conformity with its statutory duty, thereby allowing the employer to reap the benefits of the employees' labors without proper compensation as required by the FLSA.  Where damages are awarded pursuant to this test, "[t]he employer cannot be heard to complain that the damages lack the exactness and precision of measurement that would be possible had he kept records in accordance with ... the Act." Id.

112.   Based on the foregoing, Plaintiffs seek unpaid minimum wages at the required legal rate for all working hours during the relevant time period, back pay, restitution, damages, reimbursement of any base rent and tip-splits, liquidated damages, prejudgment interest calculated at the highest legal rate, attorneys' fees and costs, and all other costs, penalties and other relief allowed by law.

## **RELIEF REQUESTED**

WHEREFORE, Plaintiff, prays for an order for relief as follows:

a.      That Defendants be found liable to Plaintiffs;

b.      For a declaration that Defendants violated the rights of Plaintiffs under applicable law;

c.      For nominal damages;

d.      For compensatory and actual damages;

e.      For restitution of all monies due Plaintiffs and disgorged profits from the unlawful business practices of Defendants;

f.      For all back pay, unpaid wages, and a refund of all tips, "rent", tip-outs, fines and other amounts paid by Plaintiffs;

g.      For all statutory damages, liquidated damages, civil penalties, and/or other relief allowed by federal wage and hour statutes and regulations and/or other laws;

h.      For accrued interest;

i.      For costs of suit and expenses incurred herein, including reasonable attorneys' fees allowed under any relevant provision of law or equity, including the FLSA; and

j.      For any and all other relief that the Court may deem just, proper and equitable in the circumstances.

### **JURY DEMAND**

Plaintiffs reserves their right to and hereby requests a trial by jury.

Respectfully submitted,

 /s/ Brian M. Clark
Brian Clark
Attorney for Plaintiff

**OF COUNSEL:**
Wiggins Childs Pantazis Fisher & Goldfarb, LLC
The Kress Building
301 19th Street North
Birmingham, Alabama 35203
Telephone:  (205) 314-0500
Facsimile:  (205) 254-1500
Email:  bclark@wigginschilds.com

SERVE DEFENDANTS AT THE FOLLOWING:

MJTV, LLC
c/o Registered Agent, Michael Holt
18800 Canoebrook Lane
Toney, Alabama  35773

James M. Holt
87000 U.S. 72
Madison, Alabama  35758

Michael Holt
87000 U.S. 72
Madison, Alabama  35758